The Honorable Buzz Ritchie Representative District 2
Question:
May the Legislature create a new municipality which would be made up of land previously conveyed by the United States Government to Escambia County under a deed of conveyance restricting further conveyance either back to the federal government or to the State of Florida or an agency of the state?
In sum:
While the Legislature possesses the power to create municipalities, such action attempting to transfer property and leasehold payments to a newly created municipality in contravention of the conditions of the deed of conveyance may violate the federal supremacy clause or unlawfully impair the existing contract.
You state that you are considering legislation to create a new municipality encompassing property which was conveyed to Escambia County by the United States Government. You are concerned, however, whether the property may be conveyed to the municipality without violating the terms of the deed of conveyance from the federal government. You also question whether leasehold payments presently paid to the county by private leaseholders would become payable to the new municipality in the event the property is conveyed to the municipality.
Your question necessarily involve an interpretation of the terms and conditions of the deed and federal law authorizing the conveyance to Escambia County. Such interpretations are beyond the statutory authority possessed by this office.[1] While this office cannot comment directly in this matter, I will make the following general observations.
The property in question was conveyed by the United States Department of the Interior to Escambia County, Florida,[2] to be used by the county for
"such purpose as it shall deem to be in the public interest or be leased by it from time to time in whole or in part or parts to such persons and for such purposes as it shall deem to be in the public interest and upon such terms and conditions as it shall fix and always to be subject to regulation by said county whether leased or not leased but never to be otherwise disposed of orconveyed by it . . . ."[3] (e.s.)
The deed of conveyance and the public law authorizing the conveyance, however, provide that nothing shall prevent the county from conveying the property back to the Federal Government or to the State of Florida or any agency thereof.
This office has been informed by the United States Department of the Interior that any conveyance of the property would be reviewed by that department for compliance with the conditions of the deed of conveyance. It does not appear that the proposed conveyance has been presented to the Department of Interior for consideration and comment.
I would observe, however, that the federal public law authorizing the transfer of the property to Escambia County would control over any state legislation under the Supremacy Clause of the United States Constitution.[4] Furthermore, to the extent of the deed of conveyance is a contract between the Federal Government and Escambia County, any attempt by the Florida Legislature to pass legislation altering the terms of that agreement or unilaterally requiring the transfer of the property from Escambia County, may be subject to review as an unconstitutional impairment of the contract.[5]
Moreover, the lease payments which are presently made to Escambia County are controlled by the lease contracts. The creation of a municipality encompassing the property which is subject to the leases, accordingly, does not guarantee that the lease payments would be conveyed from the county to the municipality. The plenary power of the Legislature to create municipalities is without question.[6] There are, however, statutory provisions which govern the formation of municipalities and standards for the incorporation of such.
For instance, section 165.041(1), Florida Statutes (1990 Supplement), provides that "[a] charter for incorporation of a municipality, except in case of a merger . . . shall be adopted only by a special act of the Legislature upon determination that the standards herein provided have been met." Section 165.061(1), Florida Statutes, provides standards for incorporation of a new municipality, other than through the merger of existing municipalities, requiring that the incorporation meet specific conditions in the proposed area.[7] Relevant to the instant proposed incorporation is the following:
"(e) It must have a proposed municipal charter which:
1. Prescribes the form of government and clearly defines the responsibility for legislative and executive functions.
2. Does not prohibit the legislative body of the municipality fromexercising its powers to levy any tax authorized by theConstitution or general law." (e.s.)
Thus, the statutorily prescribed standards and procedures for creation of a municipality preclude creating a municipality which is hindered from exercising its constitutional power to levy ad valorem taxes.[8]
Thus, it appears a distinction must be recognized between legislation which creates a municipality and legislation which seeks to transfer ownership of property or entitlement to lease payments. In both instances, however, the issues noted above should be considered.
Sincerely,
Robert A. Butterworth Attorney General
[1] See, s. 16.01(3), Fla. Stat., and Statement of Policy concerning Attorney General Opinions. I would note that any question as to the authority of Escambia County to transfer ownership of the property to a newly created municipality would require an interpretation of the deed of conveyance and the public law, thereby precluding comment by this office.
[2] See, Public Law Ch. 699, July 30, 1946 and Deed of Conveyance, dated January 15, 1947, recorded in Official Record Book 248, pp. 161-163, Escambia County, Florida.
[3] Deed of Conveyance, OR Book 248, pp. 161-162, Escambia County, Florida.
[4] See, Art. 6, U.S. Const., providing in part:
"This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
[5] See, s. 10, Art. I, U.S. Const., providing that "[n]o State shall . . . make any . . . Law impairing the Obligation of Contracts . . . ."
[6] See, Coen v. Lee, 156 So. 747 (Fla. 1933).
[7] The conditions, in part, are as follows:
"(a) It must be compact and contiguous and amenable to separate municipal government. (b) It must have a total population, in the area proposed to be incorporated of at least 1,500 persons in counties with a population of less than 50,000, and of at least 5,000 population in counties with a population of more than 50,000. (c) It must have an average population density of at least 1.5 persons per acre or have extraordinary conditions requiring the establishment of a municipal corporation with less existing density. (d) It must have a minimum distance of any part of the area proposed for incorporation from the boundaries of an existing municipality within the county of at least 2 miles or have an extraordinary natural boundary which requires separate municipal government."
[8] It has been judicially determined that the standards for creation of a municipality must be present for the validity of a municipality to be recognized. See, Daytona Beach Shores v. Stateex rel. Membery, 95 So.2d 257 (Fla. 1957). See also, s. 9, Art.VII, Fla. Const., providing that municipalities shall be authorized by law to levy ad valorem taxes for municipal purposes.